1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

7

8

9

10

11

CHANCE B. IRWIN,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

Case No. 3:13-cv-05895-BHS-KLS

REPORT AND RECOMMENDATION

Noted for August 8, 2014

12

13

14

15

16

17

18

19

20

21

22

23

Plaintiff has brought this matter for judicial review of defendant's denial of his

application for supplemental security income ("SSI") benefits.  This matter has been referred to

the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR

4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).

After reviewing the parties' briefs and the remaining record, the undersigned submits the

following Report and Recommendation for the Court's review, recommending that for the

reasons set forth below, defendant's decision to deny benefits be reversed and this matter be

remanded for further administrative proceedings.

24

FACTUAL AND PROCEDURAL HISTORY

25

26

On September 15, 2010, plaintiff filed an application for SSI benefits, alleging disability

as of January 1, 2005. See ECF #15, Administrative Record ("AR") 19.  That application was

REPORT AND RECOMMENDATION - 1

1  denied upon initial administrative review on January 10, 2011, and on reconsideration on

2  February 16, 2011. See id.  A hearing was held before an administrative law judge ("ALJ") on

3  May 16, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a lay

4  witness and a vocational expert. See AR 34-64.

5  In a decision dated June 27, 2012, the ALJ determined plaintiff to be not disabled. See

6  AR 19-28.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals

7  Council on September 3, 2013, making that decision the final decision of the Commissioner of

8  Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 416.1481.  On October 21, 2013,

9  plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final

10  decision. See ECF #3.  The administrative record was filed with the Court on February 11, 2014.

11  See ECF #15.  The parties have completed their briefing, and thus this matter is now ripe for the

12  Court's review.

13  Plaintiff argues defendant's decision to deny benefits should be reversed and remanded

14  for an award of benefits, or in the alternative for further administrative proceedings, because the

15  ALJ erred in:

18      (1)    rejecting the opinion of Carla van Dam, Ph.D.;

19      (2)    failing to find plaintiff's seizure disorder was a severe impairment;

20      (3)    failing to properly develop the record in regard to Dr. van Dam's
21              concerns regarding the possibility of an underlying Fetal Alcohol
22              Spectrum Disorder ("FASD");

23      (4)    failing to properly consider whether plaintiff's impairments satisfied the
            criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.02C;

24      (5)    discounting plaintiff's credibility;

25      (6)    rejecting the lay witness evidence in the record;

26      (7)    assessing plaintiff's residual functional capacity ("RFC"); and

REPORT AND RECOMMENDATION - 2

1

2

    (8)    finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.

3

For the reasons set forth below, the undersigned agrees the ALJ erred in rejecting the opinion of

4

Dr. van Dam, in failing to properly consider the record in regard to the possibility of an

5

underlying FASD and in rejecting the lay witness evidence in the record – thus in assessing

6

7

plaintiff's RFC and in finding him to be capable of performing other jobs existing in significant

8

numbers in the national economy – and therefore in determining plaintiff to be not disabled.

9

Also for the reasons set forth below, however, the undersigned recommends that while

10

defendant's decision to deny benefits should be reversed on these bases, this matter should be

11

remanded for further administrative proceedings.

12

DISCUSSION

13

14

    The determination of the Commissioner that a claimant is not disabled must be upheld by

15

the Court, if the "proper legal standards" have been applied by the Commissioner, and the

16

"substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler,

17

785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security

18

Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.

19

Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the

20

proper legal standards were not applied in weighing the evidence and making the decision.")

21

22

(citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

23

    Substantial evidence is "such relevant evidence as a reasonable mind might accept as

24

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

25

omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

26

supported by inferences reasonably drawn from the record."). "The substantial evidence test

REPORT AND RECOMMENDATION - 3

requires that the reviewing court determine" whether the Commissioner's decision is "supported

by more than a scintilla of evidence, although less than a preponderance of the evidence is

required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence

admits of more than one rational interpretation," the Commissioner's decision must be upheld.

Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

sufficient to support either outcome, we must affirm the decision actually made.") (quoting

Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.        The ALJ's Rejection of Dr. van Dam's Opinion

The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Where the medical evidence in the record is not conclusive, "questions of credibility and

resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v.

Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining

whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

---

[1] As the Ninth Circuit has further explained:

. . . It is immaterial that the evidence in a case would permit a different conclusion than that
which the [Commissioner] reached. If the [Commissioner]'s findings are supported by
substantial evidence, the courts are required to accept them. It is the function of the
[Commissioner], and not the court's to resolve conflicts in the evidence. While the court may
not try the case de novo, neither may it abdicate its traditional function of review. It must
scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

"must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see</u> <u>also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see</u> <u>also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may

REPORT AND RECOMMENDATION - 5

1    constitute substantial evidence if "it is consistent with other independent evidence in the record."

2    Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

3        On December 15, 2010, Dr. van Dam performed a psychological evaluation of plaintiff,

4    diagnosing him with family relationship problems, a learning disorder and a borderline learning

5    disorder, and gave him a global assessment of functioning ("GAF") score of 45.[2] AR 463.  In the

6    diagnostic impression section of the evaluation report she completed, Dr. van Dam also wrote

7    "Deferred to Medical Expertise (Presumed FASD)," after having observed that plaintiff's "eyes

8    were very narrow, with facial features suggestive" of that condition. Id.  In terms of prognosis,

9

10   Dr. van Dam opined:

11       . . . Chance has had somewhat of a chaotic life with frequent moves and
         inconsistent schooling.  Concerns regarding an underlying Fetal Alcohol
12       Spectrum Disorder were also raised, with such individuals flourishing only in
         settings where they have continuous close supervision to avoid making
13       mistakes as they tend to have poor judgment and tend not to learn from their
         mistakes.  He would benefit from a referral to an organization that would help
14       provide him with supervised on-the-job training and give him the structure
         and support he needs.  He would not be viewed as able to organize this
15       independently.  Ideally, arrangements would be made for him to become
         enrolled in the extended high school program, which would give him another
16       few years of access to school and supervision and might allow him to
17       participate in automotive type training through the New Market Skills Center.
         His grandmother confirmed that he requires continuous supervision and with
18       that sort of support he is able to complete tasks.  His condition would be
19       viewed as being lifelong and permanent.

20   AR 462.  With respect to the diagnoses and opinion concerning plaintiff's prognosis provided by

21   Dr. van Dam, the ALJ stated in relevant part:

22

23   _____

24   [2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's
     judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir.
     2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue,
25   490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious
     impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at
26   1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed.
     2000) at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be
     associated with a serious impairment in occupational functioning.").

     REPORT AND RECOMMENDATION - 6

1
2
3
4
5
6
7

> I give significant weight to Dr. van Dam's diagnosis/opinion of borderline intellectual functioning based on the claimant's performance on the WAIS-IV test (6F/4).  However, I give little weight to her opinions regarding the claimant's functional ability.  The claimant demonstrated average abilities on the mental status examination on December 15, 2010 (6F/3-4).  Her suspicions and speculation with respect to possible FASD is inconsistent with the record, particularly the claimant's limited work history and his performance on the mental status examination.  Furthermore, her opinion that the claimant should participate in an extended high school program is undermined by the fact that the claimant was able to enroll and participate in some college until he was injured in January 2012.

8

AR 26.

9

The undersigned agrees with plaintiff that the ALJ failed to provide legitimate reasons for

10

rejecting Dr. van Dam's opinion.  First, as noted by plaintiff, the mental status examination was

11

not as unremarkable as the ALJ's findings imply.  For example, Dr. van Dam noted plaintiff was

12
13

"a poor informant," and though he was apparently cooperative, "appeared to be unable to provide

14

specific information regarding various events in his life." AR 460.  Also as noted by plaintiff, Dr.

15

van Dam observed he did not know certain basic information, such as the number of weeks in a

16

year or the direction of the sunrise. <u>See</u> AR 461.  Thus, although as pointed out by defendant, Dr.

17

van Dam found plaintiff demonstrated "good attention and concentration skills," the mental

18

status examination findings overall cannot be said to reflect an average level of functioning.  Nor

19

do the findings on attention and concentration necessarily conflict with the need for structure and

20
21

close supervision Dr. van Dam found, which appears to have had more to do with poor judgment

22

and an inability to learn. <u>See</u> AR 462.

23

The ALJ's general statement that Dr. van Dam's "suspicions and speculation with respect

24

to possible FASD" were "inconsistent with the record" (AR 26), furthermore, is an insufficient

25

basis for rejecting the opinion of an examining psychologist. <u>See</u> <u>Embrey v. Bowen</u>, 849 F.2d

26

418, 421-22 (9th Cir. 1998) ("To say that medical opinions are not supported by sufficient

REPORT AND RECOMMENDATION - 7

1
2
3
4
5
6
7
8
9

objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required.")  In addition, as just discussed the mental status examination was not as unremarkable as made out to be by the ALJ, and the ALJ fails to explain how a "limited work history" is inconsistent with a diagnosis of FASD or the limitations that may stem therefrom.  Lastly, the evidence in the record fails to show plaintiff attended college for a sufficient length of time – or perform adequately while he was there – to necessarily undermine Dr. van Dam's suggestion that he should participate in an extended high school program. See AR 347.

10
11
12
13

As noted by defendant, the ALJ also appears to have supported his rejection of Dr. van Dam's opinion on the potential impact of FASD on plaintiff, by relying in part on the following comments of state non-examining consultative psychologist, Sean Mee, Ph.D.:

14
15

[Dr. van Dam] notes speculation of possible FASD which she defers to "medical expertise" but then offers opinions that she indic[ates] are often associated with FASD which is not diag[nosed]. . . .

16
17
18
19
20
21
22
23

AR 83; see also AR 25.  But while it may be true that because Dr. van Dam is a psychologist and that FASD is a medical condition – and thus she may not be qualified to diagnose plaintiff with it even if that diagnosis had been more definitive – her observations and opinions certainly raised the question as to whether plaintiff had that condition, and whether it significantly impacts his ability to function.[3]  Indeed, Thomas Clifford, Ph.D., another state non-examining consultative psychologist who also reviewed the record, considered the potential existence thereof and need for further investigation in regard thereto as well. See AR 73 ("A question of FAS[D] remains to

24

25
26

[3] See Buxton v. Halter, 246 F.3d 762, 775 (6th Cir. 2001) (ALJ not obligated to accept psychologist's opinion that claimant could not maintain employment based on underlying physical conditions, because as psychologist she was not qualified to diagnose that impairment); see also Forsman v. Chater, 91 F.3d 151 (Table), 1996 WL 396718, at *1 (9th Cir. July 12, 1996) (ALJ's "specific reason for rejecting" medical source's "testimony, that it was based on speculation, is legitimate").

REPORT AND RECOMMENDATION - 8

1  be answered, perhaps.").

2      At the hearing, plaintiff's counsel requested that the ALJ order a physical evaluation for

3  plaintiff to resolve the question of whether he in fact had FASD. See AR 39.  In so requesting,

4  plaintiff's counsel agreed that Dr. van Dam was not herself qualified to make that diagnosis, but

5  described her as "a very conservative psychologist who has been evaluating claimant's [sic] for

6  decades," thereby warranting further investigation into the issue. Id.  The ALJ denied the request

7  because the issue "was sufficiently addressed at the [state review] level," and because:

8

9          . . . [t]here is no mention of suspected fetal alcohol syndrome in the claimant's
           educational or medical records, nor is it mentioned as a condition in the third
10         party statements provided by the claimant's grandmother, Nancy Irwin, except
           to reference Dr. van Dam's report . . .
11

12  AR 19.

13     An ALJ has the duty "to fully and fairly develop the record and to assure that the

14  claimant's interests are considered." Tonapetyan, 242 F.3d at 1150 (citations omitted).  That duty

15  is triggered where the evidence in the record is ambiguous or the ALJ has found "the record is

16  inadequate to allow for proper evaluation" thereof. Id.; see also Mayes v. Massanari, 276 F.3d

17  453, 459 (9th Cir. 2001).  Regardless of Dr. van Dam's reputation as a diagnostic clinician, as

18  discussed above at least two psychologists in the record found the evidence sufficient enough to

19  deem a diagnosis of FASD possible.  The fact that plaintiff's grandmother, a lay witness, did not

20  more specifically mention the diagnosis is not a sufficient basis for declining to further develop

21  the record on this issue, as she herself is not a medical professional.  It is difficult to see how the

22  state agency review sufficiently addressed this issue, furthermore, given Dr. Clifford's comments

23  and the fact that Dr. Mee merely paraphrased Dr. van Dam's findings and concluded FASD was

24  not a diagnosed impairment.

25     Although the lack of mention of FASD in educational or other medical records *may*

26  REPORT AND RECOMMENDATION - 9

indicate plaintiff has not previously been diagnosed with that condition, this does not necessarily

mean he does not have it, or suffer from the effects of it, particularly given other evidence in the

record – including Dr. van Dam's personal observations noted above – that such may be the case.

For example, plaintiff's grandmother informed Dr. van Dam that his mother "was an alcoholic,

and had been a binge drinker during at least the first trimester of the pregnancy. "AR 458; <u>see</u>

http:// www.cdc.gov/ncbddd/fasd/index.html ("Fetal alcohol spectrum disorders (FASDs) are a

group of conditions that can occur in a person whose mother drank alcohol during pregnancy.").

The questions raised by this evidence, along with Dr. van Dam's and Dr. Clifford's comments

and Dr. van Dam's opinion, created sufficient ambiguity in the evidence before the ALJ

concerning this issue to trigger his duty to develop the record.

II.      The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

take into account," unless the ALJ "expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir.

2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

link his determination to those reasons," and substantial evidence supports the ALJ's decision.

<u>Id.</u> at 512.  The ALJ also may "draw inferences logically flowing from the evidence." <u>Sample</u>,

694 F.2d at 642.

With respect to the lay witness evidence in the record, the ALJ found as follows:

> . . . I have considered the lay witness statements presented by the claimant's
> grandmother, Nancy Irwin (6E, 8E, 18E) and the testimony of his aunt,
> Jacqline Irwin.  These statements and observations have been very carefully
> considered, and I have given them some weight in this assessment.  However,
> their observations regarding the claimant's day-to-day activities do not
> establish that the claimant is disabled.  Friends and family members are not

REPORT AND RECOMMENDATION - 10

1
2
3
4
5
6
7

> medically trained to make exacting clinical observations.  In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.  Although I find that their statements somewhat credible as to their observations, their statements are inconsistent with the medical evidence of record, which does not support the claimant's allegations, and inconsistent with the claimant's reported level of activity throughout the record.  I am unable to give significant weight to witness statements that are inconsistent with the medical evidence of record.

8
9
10
11
12
13
14
15
16
17
18
19

AR 26.  The undersigned agrees with plaintiff that the reasons the ALJ offered here for rejecting the lay witness statements are not sufficiently specifically germane to each witness. See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) ("[T]he reasons 'germane to each witness' must be specific.") (quoting Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1054 (9th Cir. 2006)).  Although the ALJ need not cite specific portions of the record, the Court must be given at least some indication as to the actual medical or other evidence he relied on to reject the lay witness testimony.  That indication is lacking here.  Nor is the fact that neither lay witness is medically trained an adequate reason for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918–19 (9th Cir.1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").

20

IV.    The ALJ's Assessment of Plaintiff's RFC and Step Five Determination

21
22
23
24
25
26

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his

REPORT AND RECOMMENDATION - 11

1    or her limitations." Id.

2        A claimant's residual functional capacity is the maximum amount of work the claimant is

3    able to perform based on all of the relevant evidence in the record. See id.  However, an inability

4    to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ

5    must consider only those limitations and restrictions "attributable to medically determinable

6    impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

7    claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be

8    accepted as consistent with the medical or other evidence." Id. at *7.

9

10       The ALJ assessed plaintiff with the residual functional capacity:

11       **. . . to perform light work . . . [he] is able to perform simple routine tasks,**
         **but is limited to frequent handling with his left upper extremity.  He**
12       **should avoid even moderate exposure to hazards and should not operate**
         **motorized vehicles.**
13

14   AR 23 (emphasis in original).  But because the ALJ erred in rejecting Dr. van Dam's opinion and

15   the lay witness evidence in the record, the undersigned agrees with plaintiff it is far from clear

16   that the ALJ's RFC assessment is supported by substantial evidence in the record.  Accordingly,

17   the undersigned finds the ALJ erred here as well.

18

19       If a claimant cannot perform his or her past relevant work, at step five of the disability

20   evaluation process the ALJ must show there are a significant number of jobs in the national

21   economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

22   1999); 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational

23   expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180

24   F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

25       An ALJ's findings will be upheld if the weight of the medical evidence supports the

26   hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987);

REPORT AND RECOMMENDATION - 12

1   Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony

2   therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See

3   Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the

4   claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

5   (citations omitted).  The ALJ, however, may omit from that description those limitations he or

6
7   she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

8           At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

9   substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

10  functional capacity. See AR 61.  In response to that question, the vocational expert testified that

11  an individual with those limitations – and with the same age, education and work experience as

12  plaintiff – would be able to perform other jobs. See AR 61-62.  Based on the testimony of the

13
14  vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in

15  significant numbers in the national economy. See AR 27.  Again, however, because of the ALJ's

16  errors both in evaluating the medical and lay witness evidence in the record and in assessing

17  plaintiff's RFC, it also cannot be said at this time that the hypothetical question the ALJ posed is

18  completely accurate, and thus that the ALJ's reliance on the vocational expert testimony to find

19  plaintiff disabled at step five is supported by substantial evidence at this time.

20  V.      This Matter Should Be Remanded for Further Administrative Proceedings

21          The Court may remand this case "either for additional evidence and findings or to award

22
23  benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

24  proper course, except in rare circumstances, is to remand to the agency for additional

25  investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

26  omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

REPORT AND RECOMMENDATION - 13

1    unable to perform gainful employment in the national economy," that "remand for an immediate

2    award of benefits is appropriate." Id.

3        Benefits may be awarded where "the record has been fully developed" and "further

4    administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

5    v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

6    where:

7

8        (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
         claimant's] evidence, (2) there are no outstanding issues that must be resolved
9        before a determination of disability can be made, and (3) it is clear from the
         record that the ALJ would be required to find the claimant disabled were such
10       evidence credited.

11   Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

12   Because issues still remain in regard to the medical and lay witness evidence in the record,

13   plaintiff's residual functional capacity and his ability to perform other jobs existing in significant

14   numbers in the national economy, remand for further consideration of those issues is warranted.

15

16       Plaintiff argues that given the ALJ's errors, the opinion of Dr. van Dam and lay witness

17   statements should be credited as a matter of law, resulting in a finding of disability and an award

18   of benefits.  It is true that where the ALJ has failed "to provide adequate reasons for rejecting the

19   opinion of a treating or examining physician," that opinion generally is credited "as a matter of

20   law." Lester, 81 F.3d at 834 (citation omitted).  Similarly, where lay witness testimony is

21   improperly rejected, it also may be credited as a matter of law. See Schneider v. Barnhart, 223

22   F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence rejected by ALJ is given effect

23   required by federal regulations, it became clear claimant's limitations were sufficient to meet or

24   equal listed impairment).

25

26       The Ninth Circuit has held, however, that where the ALJ is not required to find the

REPORT AND RECOMMENDATION - 14

1    claimant disabled on the crediting of evidence, this constitutes an outstanding issue that must be

2    resolved, and thus the <u>Smolen</u> test will not be found to have been met. See <u>Bunnell v. Barnhart</u>,

3    336 F.3d 1112, 1116 (9th Cir. 2003); <u>see also</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir.

4    2003) (noting courts have "some flexibility" in how "credit as true" rule is applied); <u>Garrison v.

5

6    <u>Colvin</u>, --- F.3d ---, 2014 WL 3397218, at *21 (9th Cir. 2014) (holding <u>Connett</u> "allows

7    flexibility to remand for further proceedings when the record as a whole creates serious doubt as

8    to whether the claimant is, in fact, disabled").

9         In this case, it is not at all clear that the ALJ would be required to find the record supports

10   a diagnosis of FASD, let alone the functional limitations Dr. van Dam opined resulted therefrom.

11   Because of that, and given the conflicting medical evidence in the record, it also is far from clear

12   that the ALJ would be required to find plaintiff disabled based on the lay witness evidence in the

13   record as well. See <u>Schneider</u>, 223 F.3d at 976 (noting Commissioner failed to cite *any* evidence

14   to contradict statements of five lay witnesses regarding claimant's disabling impairments).  Thus,

15   the undersigned finds there remains "serious doubt" as to whether plaintiff is in fact disabled,

16   warranting remand for further administrative proceedings. <u>Garrison</u>, 2014 WL 3397218, at *21.

17

18                                    CONCLUSION

19        Based on the foregoing discussion, the undersigned recommends the Court find the ALJ

20   improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as

21   well that the Court reverse defendant's decision to deny benefits and remand this matter for

22   further administrative proceedings in accordance with the findings contained herein.

23

24        Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

25   72(b), the parties shall have **fourteen (14) days** from service of this Report and

26   Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6.  Failure to file

     REPORT AND RECOMMENDATION - 15

1  objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>,

2  474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

3  is directed set this matter for consideration on **August 8, 2014**, as noted in the caption.

4      DATED this 21 day of July, 2014.

5

6

7

8      Karen L. Strombom
       United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 16